UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LUIS NUNEZ,

                        Petitioner,

        -against-

KATHLEEN GERBING, SUPT.,
Otisville Correctional,

                        Respondent.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

14 Civ. 8475 (NSR)(PED)

TO THE HONORABLE NELSON S. ROMÁN, United States District Judge:

      Petitioner Luis Nuñez ("Nuñez" or "Petitioner"), proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

      On April 13, 2000, Nuñez was convicted by a jury of assault and weapon possession charges arising out of a September 11, 1999 stabbing in Haverstraw, NY. On May 11, 2000, Nuñez was sentenced to concurrent terms of twenty years for the assault count and three and one-half to seven years for the weapon count. On June 13, 2011, over petitioner's objection, the trial court re-imposed sentence to add a five year term of post-release supervision ("PRS") as required by N.Y. Penal L. §70.45(1).

      By this habeas petition, Nuñez challenges only the lawfulness of his re-sentencing. Nuñez is currently incarcerated at Otisville Correctional Facility.

## I. BACKGROUND[1]

### A.   Proceedings in the Trial Court

      Petitioner was convicted after trial on April 13, 2000, and on May 11, 2000, he received a determinate sentence of 20 years imprisonment on the assault count. Although a term of PRS

---

[1] The limited record pertinent to petitioner's claims appears at Dkt. # 11.

was mandatory under N.Y. Penal L. § 70.45(1), the court did not impose PRS at that time.

Eleven years later, by letter dated April 27, 2011, New York Department of Corrections authorities ("DOCS") notified petitioner, the prosecutor, and the court that Nuñez's sentence did not include the obligatory PRS term. By order dated May 9, 2011, the court appointed counsel and calendered the case for re-sentencing pursuant to N.Y. Correction L. § 601-d.

On about May 19, 2011, petitioner, acting *pro se*, filed a motion objecting to the proposed re-sentencing and arguing that, if a term of PRS was added to his sentence, his 20 year prison term should be reduced in like amount. On June 13, 2011, Nuñez appeared with counsel, who objected to the re-sentencing on assorted grounds including Ex Post Facto, Due Process, and Equal Protection. Rejecting those arguments, the court imposed a five-year PRS term to follow petitioner's undischarged 20 year prison sentence.

## B. Direct Appeal

Petitioner, again *pro se*, filed a brief in the Appellate Division, Second Department, which reprised the various challenges rejected below. On July 7, 2013, the Second Department affirmed the resentence:

> The defendant's contention that the County Court improperly resentenced him after the expiration of the time limit set forth in Correction Law § 601-d (4) (d) is without merit (see People v Velez, 19 NY3d 642, 649, 975 NE2d 907, 951 NYS2d 461 [2012]; People v McDaniel, 99 AD3d 814, 814, 952 NYS2d 246 [2012]).
>
> The defendant's contention, in effect, that his resentencing to a term including the statutorily required period of postrelease supervision violated his right to due process also is without merit, since he had not yet completed his originally imposed sentence of imprisonment at the time he was resentenced (see People v Lingle, 16 NY3d 621, 630-632, 949 NE2d 952, 926 NYS2d 4 [2011]; People v Louis, 90 AD3d 1075, 1075, 935 NYS2d 516 [2011]).
>
> The defendant's remaining contentions are without merit.

People v. Nunez, 108 A.D.3d 683 (2d Dep't 2013). On October 16, 2013, the New York Court of Appeals denied leave. People v. Nunez, 22 N.Y. 3d 958 (2013).

### C. The Instant Petition

Nuñez timely filed his habeas petition October 13, 2014. The petition sets forth the following claims:

> (1) Whether the state court violated the United States Constitution by adding more time to the previously imposed sentence after the original sentence was silent on post-release supervision as part of sentence. . . Court was without authority or jurisdiction to alter a lawfully imposed sentence, and thus has violated the Ex Post Facto clause of the Constitution;
>
> (2) Whether the state legislature has the authority to merge together Correction Law §601-d and Penal Law §70.45 and re-write a statute to apply to prior events when the statute was unconstitutional; and
>
> (3) The post-release statute treats different classes of defendants differently and thus violates the Equal Protection Clause of the United States Constitution.

(Dkt. # 2.)

## II. APPLICABLE LAW

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Prior to reviewing the merits of a state criminal judgment in a habeas action, the court must first determine whether the petitioner has complied with the procedural requirements in 28 U.S.C. §§ 2244 and 2254. If the court finds that these procedures were complied with, the court must determine the appropriate standard of review applicable to the petitioner's claims in accordance with 2254(d). The procedural and substantive standards applicable to habeas review, which were which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

### A. Timeliness

3

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court proceeding. See 28 U.S.C. §2244(d)(1). The one-year limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.
>
> (C) the date on which the Constitutional right asserted was initially recognized by the Supreme Court, if the right has been a newly recognized right by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition. See id. § 2244(d)(2). The one-year limitation period may also be subject to equitable tolling when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstances," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal emphasis omitted). In addition, "[c]onsistent with the

maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Harper, 648 F.3d at 138 (internal citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). However, the applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Id.

## B. Exhaustion

A Federal Court may not grant habeas relief unless the petitioner has first exhausted her claim in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

In order to exhaust a federal claim, a petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary

review), thereby alerting that court to the federal nature of the claim," thereby "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). This notice demands that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). The Second Circuit allows multiply ways for a petitioner to fairly put the state court on notice of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." See Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).

A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be (procedurally) barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

For exhaustion purposes though, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991). A procedurally barred claim as such may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139. Unless the petitioner can show (1) cause for the procedural default and (2) actual prejudice; or (1) a fundamental miscarriage of justice (or actual innocence), the petitioners claim cannot be reviewed a federal court. (See Gray v. Netherland, 518 U.S. 152 (1996); (Sclup v. Delo, 513 U.S. 295 (1995)).

However, aside from the procedure described above, a federal court may exercise its discretion and review a "mixed" petition (containing both exhausted and unexhausted claims) if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

## C. Procedural Default

Federal Habeas Corpus review of a state court denial of a state prisoner's federal Constitutional claim is barred if the state court's decision rests on an adequate and independent state procedural ground unless the petitioner can show cause and prejudice for the procedural default or a fundamental miscarriage of justice (or "actual innocence"). A procedural bar is considered "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." See Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotation marks omitted). A procedural bar is considered "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

## D. Standard of Review

7

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). See 28 U.S.C. § 2254(a). A federal court may not grant habeas relief when reviewing petitions unless the petitioner establishes that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." Williams v. Taylor, 529 U.S. 362, 405 (2000). Regarding the "unreasonable application" test of 2254(d), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

A state court decision is an "unreasonable application" of U.S. Supreme Court law if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new

8

context where it should apply." Id. at 407. However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). In other words, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Additionally, under the AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. §2254(e)(1).

### III. ANALYSIS

#### A. Background Concerning Post-Release Supervision

In 1998, New York State adopted "Jenna's Law," which abolished parole for specified felony offenses. See People v. Williams, 14 N.Y.3d 198, 206 (2010). The new statutory scheme required determinate sentences and also specified mandatory terms of post-release supervision. See N.Y. Penal L. § 70.45. Because the new statute did not address certain procedural issues associated with the implementation of the new PRS terms, a series of legal challenges ensued. See, e.g., People v. Catu, 4 N.Y.3d 242 (2005)(defendant must be advised of mandatory PRS term as part of valid plea allocution). In 2006, the Second Circuit invalidated, on due process grounds, a DOCS practice of tacking on the mandatory PRS term administratively in cases where the court had failed to pronounce the PRS term at the time of sentencing. Earley v.

9

Murray, 451 F.3d 71 (2d Cir. 2006). The federal Court of Appeals indicated that, in a case where the sentencing court had failed to impose a mandatory PRS term, the "proper course" would be for prison authorities to "inform the state," who could then arrange to "correct the sentence through a judicial proceeding." Id. at 76. In 2008, the state legislature enacted a re-sentencing scheme which substantially codified the procedure outlined by the Second Circuit in Earley. See N.Y. Corrections L. § 601-d.[2]

---

[2]Section 601-d provides as follows:

Post-release supervision; certain cases

This section shall apply only to inmates in the custody of the commissioner, and releasees under the supervision of the department, upon whom a determinate sentence was imposed between September first, nineteen hundred ninety-eight, and the effective date of this section, which was required by law to include a term of post-release supervision:

    1. For purposes of this section, such a person shall be deemed a "designated person" if the commitment order that accompanied such person does not indicate imposition of any term of post-release supervision; provided, however, that if such agency with custody of or supervision over such person has the sentencing minutes that show that a term of post-release supervision was actually pronounced at sentence, such person shall not be deemed a designated person.

    2. Whenever it shall appear to the satisfaction of the department that an inmate in its custody that a releasee under its supervision, is a designated person, the department shall make notification of that fact to the court that sentenced such person, and to the inmate or releasee.

    3. If a sentencing court that has received such notice, after reviewing the sentencing minutes, if available, is or becomes aware that a term of post-release supervision was in fact pronounced at the prior sentencing of such person, it shall issue a superseding commitment order reflecting that fact, accompanied by a written explanation of the basis for that conclusion, and send such order and explanation to the department, to the defendant, and to the attorney who appeared for the defendant in connection with the judgment or sentence or, if the defendant is currently represented concerning his or her conviction or sentence or with respect to an appeal from his or her sentence, such present counsel.

    4. (a) If the sentencing court shall not have issued a superseding commitment order, reflecting imposition of a term of post-release supervision, within ten days after receiving notice pursuant to subdivision two of this section, then the sentencing court shall appoint counsel pursuant to section seven hundred twenty-two of the county law, provide a copy of the notice

---

[footnote continued]

pursuant to subdivision two of this section to such counsel, and calendar such person for a court appearance which shall occur no later than twenty days after receipt of said notice. At such court appearance, the court shall furnish a copy of such notice and the proceeding date pursuant to paragraph (c) of this subdivision to the district attorney, the designated person, assigned counsel and the department .

(b) The court shall promptly seek to obtain sentencing minutes, plea minutes and any other records and shall provide copies to the parties and conduct any reconstruction proceedings that may be necessary to determine whether to resentence such person.

(c) The court shall commence a proceeding to consider resentence no later than thirty days after receiving notice pursuant to subdivision two of this section.

(d) The court shall, no later than forty days after receipt of such notice, issue and enter a written determination and order, copies of which shall be immediately provided to the district attorney, the designated person, his or her counsel and the department along with any sentencing minutes pursuant to section 380.70 of the criminal procedure law.

(e) The designated person may, with counsel, knowingly consent to extend the time periods specified in paragraphs (c) and (d) of this subdivision. The people may apply to the court for an extension of ten days on the basis of extraordinary circumstances that preclude final resolution within such period of the question of whether the defendant will be resentenced. The department shall be notified by the court of any such extension.

5. The court shall promptly notify the agency that referred a designated person whenever it (a) resentences the defendant to a sentence that includes a term of post-release supervision; or (b) determines that it will not resentence the defendant under this section or otherwise. Upon the conclusion of the proceeding, the court shall furnish the parties and the agency that referred the designated person with an accurate copy of the current order of commitment for the person.

6. In any case in which the department notifies the court of a designated person, and has not been informed that the court has made a determination in accordance with paragraph (d) of subdivision four of this section (unless extended pursuant to paragraph (e) of such subdivision), the department may notify the court that it has not received a determination and, in any event, shall adjust its records with respect to post-release supervision noting that the court has not, in accordance with subdivision four of this section, imposed a sentence of post-release supervision.

7. When the department complies with this section as to a person confined in state prison, it need not separately follow the procedures set forth in section six hundred one-a of this article.

### B. Ex Post Facto Claim

Nunez first claims that, by invoking Corrections Law § 601-d – a statute enacted in 2008 – to re-sentence him for a conviction he sustained in 2000, the state violated his rights under the Ex Post Facto clause.

Article I, Section 10 of the United States Constitution provides that "no state shall . . . pass any . . . ex post facto law." While "every Ex Post Facto law is retrospective, every retrospective law is not an Ex Post Facto law." Calder v. Bull, 3 U.S. 386, 391 (1798). Instead, the clause applies only to penal statutes which "punish as a crime an act previously committed, which was innocent when done; . . . make more burdensome the punishment for a crime, after its commission; or deprive one charged with crime of any defense available according to law at the time when the act was committed." Collins v. Youngblood, 497 U.S. 37, 52 (1990). Applying that standard, the Supreme Court in Collins determined that retroactive application of a Texas statute which changed the law by authorizing an appellate court to correct an unauthorized sentence without affording the defendant a new trial did not violate the Ex Post Facto clause. Id.

Here, retroactive application of Corrections Law § 601-d, which enabled the court to impose the mandatory PRS term the court had erroneously failed to include at the time petitioner was sentenced in 2000, did not violate the Ex Post Facto clause. The re-sentencing statute did not punish as a crime an act that was innocent when it was done, nor did it increase the

---

[footnote continued]

8. Nothing in this section shall affect the power of any court to hear, consider and decide any petition, motion or proceeding pursuant to article four hundred forty of the criminal procedure law, article seventy or seventy-eight of the civil practice law and rules, or any authorized proceeding.

punishment for a crime or eliminate any defenses. Instead, § 601-d simply permitted the state to correct petitioner's sentence by adding the erroneously omitted PRS term which was plainly required by § 70.45 of the Penal Law at the time when petitioner assaulted his victim in 1999 and when he was convicted and sentenced in 2000. See Becker v. Paterson, No. 1:09-CV-392, 2010 U.S. Dist. 2010 WL 1186521 at *4 (N.D.N.Y Mar. 23, 2010)(no Ex Post Facto violation because § 601-d "merely provides a mechanism for judicial correction" of illegal sentences.)

Accordingly, petitioner's Ex Post Facto claim must be denied.

## C. Due Process Claim

Next, Nuñez somewhat cryptically asserts that the legislature lacked the authority to "merge" Penal Law § 70.45 and Correction Law § 601-d and then retroactively apply the result. On direct appeal, petitioner relied principally on People v. Behlog, 74 N.Y. 2d 237 (1989), a case involving statutory interpretation and state law, and respondent argues that any federal claim petitioner seeks to advance is consequently unexhausted but procedurally barred. Construing petitioner's *pro se* filings liberally as raising the strongest arguments they suggest, however, I find that petitioner's citation on direct appeal of two federal cases involving due process in the sentencing context – Hill v. United States ex rel Wampler, 298 U.S. 460 (1936) and Earley v. Murray, 451 F.3d 71 (2d Cir. 2006) – was sufficient to exhaust a federal due process claim.[3] See Daye v. Attorney General, 696 F.2d 186 (2d Cir. 1982)(en banc)(reliance on "federal constitutional precedents" sufficient to exhaust claim). However, there is no basis for any claim that petitioner's re-sentencing violated due process.

---

[3] The Appellate Division apparently read petitioner's argument in this vein: "The defendant's contention, in effect, that his resentencing to a term including the statutorily required period of postrelease supervision violated his *right to due process* also is without merit[.]" People v. Nunez, 108 A.D.3d 683 (2d Dept. 2013)(emphasis added.)

Instead, in the instant case it is clear that the state employed just the procedure which the Second Circuit described in Earley as the "proper course" to *avoid* a due process violation. 451 F.3d at 76. The Department of Corrections, having determined that petitioner's sentence did not include the mandatory PRS term, "inform[ed] the state of the problem . . . [and the state then] moved to correct the sentence through a judicial proceeding, in the defendant's presence, before a court of competent jurisdiction." Id. Thus, before he was re-sentenced, petitioner received both notice and an opportunity to be heard, the hallmarks of constitutional due process. See LaChance v. Erickson, 522 U.S. 262, 266 (1998).

Accordingly, petitioner's due process claim must be denied.

### D.  **Equal Protection Claim**

Finally, Nuñez claims that his re-sentencing violated his rights under the Equal Protection Clause because the New York treats different classes of criminal defendants differently upon re-sentencing pursuant to § 601-d. Nuñez points out that defendants who pleaded guilty are afforded the opportunity to withdraw their pleas before the PRS term is imposed, whereas he – having been convicted after a jury trial – received no similar opportunity to revisit his underlying conviction. Thus, the argument goes, the re-sentencing scheme impermissibly distinguishes between defendants who pleaded guilty and defendants convicted after trial.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." Brown v. City of Oneonta, New York, 221 F.3d 329, 334 (2d Cir. 1999) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). However, "the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." Plyler v. Doe, 457 U.S. 202, 216 (1982) (quoting

14

Tigner v. Texas, 310 U.S. 141, 147 (1940)). Thus, to prevail on an equal protection claim, petitioner must show that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Giordano v. City of New York, 274 F.3d 740, 750-51 (2d Cir. 2001) (internal citations omitted). A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." Green v. Waterford Bd. Of Ed., 473 F.2d 629, 633 (2d Cir. 1973) (quoting Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)). That means that "if the classification has some 'reasonable basis', it does not offend the Constitution simply because (it lacks) mathematical nicety or because in practice it results in some inequality." Rye Psychiatric Hosp. Center, Inc. v. Shalala, 52 F.3d 1163, 1171 (2d Cir. 1995) (internal citations omitted).[4]

The New York Court of Appeals has determined that "where PRS is a 'direct consequence' of a conviction, a defendant seeking to plead guilty must be informed that a period of PRS constitutes part of his sentence" and that "a defendant who was not advised about a term of PRS prior to pleading guilty may seek vacatur of the plea." People v. Williams, 14 N.Y.3d 198, 206 (2010) (quoting People v. Catu, 4 N.Y.3d 242, 244-245 (2005)).[5] Thus, a defendant

---

[4] Prisoners are not a "suspect class," Lee v. Governor, 87 F.3d 55, 60 (2d Cir. 1996), so distinctions between differing classifications of offenders do not require any type of heightened scrutiny. Mathie v. Dennison, No. 06 Civ. 3184, 2007 U.S. Dist. 2007 WL 2351072 at *8 (S.D.N.Y. Aug. 16, 2007).

[5] It is unclear whether PRS is a "direct consequence" of conviction as a matter of federal constitutional law. See Pignataro v. Poole, 381 Fed.Appx. 46, 50 (2d Cir. June 18, 2010).

who pleaded guilty without being advised that PRS would be part of his sentence can avoid re-sentencing under § 601-d by moving to vacate his underlying plea.[6]

Here, however, petitioner did *not* plead guilty, so the law did not require that he be advised concerning PRS before he was convicted. Under New York law, therefore, the trial court's failure to address PRS at sentencing required re-sentencing under § 601-d, but that judicial omission did not affect the validity of Nuñez's underlying conviction. Nuñez's situation is therefore not similar to that of defendants who pleaded guilty without being informed about PRS, and the different legal options which are available to "guilty plea" defendants upon re-sentencing are a consequence of the different legal procedure by which they were convicted.

Thus, to the extent that New York's scheme for re-sentencing defendants under § 601-d differentiates between defendants who pleaded guilty and defendants convicted after trial, the distinction is entirely rational. Petitioner has not established any violation of his rights under the Equal Protection Clause, so this claim must be denied.

## IV. CONCLUSION

For the reasons set forth above, I conclude–and respectfully recommend that Your Honor should conclude–that the instant petition for a writ of habeas corpus should be denied in its entirety. Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-848 (2000).

---

[6]Anticipating this scenario, the legislature enacted N.Y. Penal L. § 70.85 "to allow the District Attorney to consent to re-sentencing to the previously imposed determinate term without any term of postrelease supervision, thereby eliminating any need for the pleas to be vacated[.]" People v. Peer, 22 Misc.3d 620, 622 (Essex County Court 2008)(quotations omitted).

Dated: July 21, 2015
       White Plains, NY

                                      Respectfully Submitted,

                                      Paul E. Davison, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Nelson S. Román, at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Román.

A copy of this Report and Recommendation has been mailed to:

Luis Nuñez
No. 00-A-3851
Otisville Correctional Facility
P.O. Box 8
Otisville, NY 10924

17